PORTER *v.* MICHIGAN ELEVATOR EXCHANGE.

1. SALES—BEANS—CONVERSION.

   Conversion of beans by seller *held*, not established where, after he had set aside a quantity of beans to fulfil buyer's order under "draft, with bill of lading attached, payable, net cash on arrival" buyer inspected them and announced such beans would be rejected as not of contract grade, seller refused to ship without prepayment on buyer's demand for shipment of "contract beans" and seller sold beans hitherto set aside on the market.

2. NEW TRIAL—NEWLY-DISCOVERED EVIDENCE—MARKET PRICE.

   Denial of motion for new trial based on alleged newly-discovered evidence of market price at time of sale of beans alleged to have been converted *held*, proper in view of previous availability of such evidence.

3. JUDGMENT—COMMON COUNTS—AMENDMENT—INTEREST.

   Trial court *held*, to have power to amend judgment rendered on the common counts in action tried without a jury to include an omitted item of interest where plaintiff moved for new trial (3 Comp. Laws 1929, §§ 14148, 14149).

Appeal from Ingham; Carr (Leland W.), J. Submitted January 6, 1937. (Docket No. 34, Calendar No. 38,754.) Decided March 2, 1937.

Action by Elmer G. Porter against Michigan Elevator Exchange, a Michigan corporation, for conversion of beans, to recover damages for breach of contract calling for delivery of beans, and on the common counts. From judgment for plaintiff in an alleged insufficient amount, he appeals. Affirmed.

*Brown, Gregg, Thompson & Glassen,* for plaintiff.

*Hayden, Hubbard & Rathbun* (*Robert T. Arvidson,* of counsel), for defendant.

WIEST, J. In August, 1932, plaintiff, a produce dealer residing at Caywood, New York, contracted with defendant Michigan corporation, for the purchase of two lots of beans; one lot of 800 100-pound bags "Choice H. P. Mich. Pea Beans" at $2 per bag for September delivery, "F. O. B. Michigan, Alma rate to be equalized. Terms shall be draft, with bill of lading attached, payable, net cash on arrival," and another lot of 800 100-pound bags "U. S. #1 Mich. Pea Beans," at $2 per bag, under like delivery and terms. Not being able to take the beans at the agreed delivery time plaintiff arranged with defendant for storage and paid storage charges and also various sums called "margin" to meet the decline in the market price of the beans. The matter ran along with much correspondence between the parties, and some heat, and finally culminated in defendant reconditioning and marketing the beans and tendering plaintiff $675.33, as his due above charges

and credits. Plaintiff declined the tender and brought this suit, declaring for conversion of the beans in one count and breach of contract and consequent loss in another and the common counts in assumpsit.

The case was heard before the court without a jury and plaintiff awarded $995.33, that being the amount of the tender with some other items, but nothing by way of damages under the first two counts of the declaration. Later the judgment was amended by an addition of some omitted interest, amounting to $52.53.

Plaintiff, by appeal, states 14 questions but in the brief it is said:

"The principal question involved in the instant appeal is * * * that the refusal of the defendant to ship plaintiff's beans to him until plaintiff had paid therefor in advance, the contract of purchase providing otherwise, constituted a conversion of the property by the defendant."

The beans were stored at Port Huron and, on July 17, 1933, plaintiff went there, inspected the beans, took samples and, on the 29th of that month, wrote defendant:

"These beans that I inspected are not going to be accepted by me on this contract."

He also testified:

"In letters on my return from Port Huron, I advised them that I refused to accept those beans under the contract. I was indignant because of the excessive moisture which I found in the beans at that time, plus four or five per cent. which they had shrunk and it was my business to get some allowance for that reason. * * *

"None of the beans I saw in Port Huron in July, 1933, would have complied with CHP or U. S. No. 1

in September, 1932.   I would say the difference in value would have been 15¢ per bag at least. * * *

"*Q.* Did you order out those specific beans that were put through at your request, delivered to you at the warehouse when you ordered out the beans on the 16th of September?

"*A.* Yes.

"*Q.* Those are the beans you ordered out?

"*A.* Yes.

"*Q.* And would you have accepted those beans?

"*A.* Yes, sir; I would if they had shipped out when I ordered them, I would have accepted them. * * *

"*Q.* Mr. Porter, you say that you would have accepted these beans had they been shipped.   Did you ever communicate that information to the Michigan Elevator Exchange after you told them you would not accept CHP beans?

"*A.* No, I don't know as there is anything in the letters that informed them that I would."

On September 11, 1933, plaintiff telegraphed defendant:

"Ship 1,600 bags contract beans via Buffalo or Suspension bridge care of Lehigh Valley to Caywood making draft payable on arrival for balance due wire me today confirmation of shipping making draft through Wheeler National Bank Interlaken New York."

The same day defendant replied by telegram:

"Balance due these 1,600 bags beans in store Port Huron belonging to you $2,536.37 deposit cash Harold Sands Rochester Bean Exchange Rochester New York goods will be loaded immediately letter following."

September 22, 1933, defendant wrote plaintiff:

"We stand ready to deliver the beans which you have in storage with us any time you deliver to us,

or to any disinterested party, the amount of money that is coming to us on this transaction. We want pay for our beans before we ship them.''

To which plaintiff replied by letter of September 23, 1933:

''If you look at your contracts you know what they are and how you are bound to make your collections, the goods have never yet left your possession, you are bound on the method of shipping and collecting. * * *

''You say you stored in lot number according to your own advice by wire which you gave falsely when we asked the original moisture content of these beans, I say falsely and you lied because you said 19 per cent., it develops and is admitted no one ever took a moisture test. However 800 bags of these Beans was bought as US #1 and the 18 per cent. moisture was the limit.

''You therefore never gave me contract beans and you intend by your policy to enforce me to pay just the same. * * *

''I am going to have what I bought, as I see it you have just about appropriated this or guilty of conversion, we have never asked you to part with your property before it was paid for, but you ask us to pay for it before it is shipped which we refuse to do.

''When you get into a frame of mind of giving me US #1 and CHP Pea Beans as I bought we will talk. My papers have gone to a lawyer in Michigan.''

Thereafter plaintiff, from time to time, received statements of amounts due for storage but did not pay or reply thereto.

It is true the original contracts provided for shipment ''F. O. B. Michigan, Alma rate to be equalized. Terms shall be draft, with bill of lading attached, payable, net cash on arrival,'' but subsequent deal-

ings between the parties brought about such delay, with attendant modifications, coupled with plaintiff's insistence upon unwarranted demands, and his statement that the beans, stored for him and inspected by him, would not be accepted under the contract precludes plaintiff from now taking the position that he would have accepted them under the terms of the contract and that defendant was guilty of conversion in demanding payment before shipment and thereafter selling the beans.

In August, 1933, defendant reconditioned the beans by polishing and handpicking and then sold them in the market and, from the avails, after credits and charges, tendered plaintiff the mentioned amount, which he refused and returned.

Plaintiff claims there was conversion of his property by defendant and measures his damages at a substantial sum. Apparently he has abandoned the count for breach of contract.

Beans in storage lose weight. To maintain the action for conversion required that the beans had been appropriated to the contract. This had been done but when plaintiff, after he had inspected the segregated beans in July, 1933, and notified defendant that they would not be accepted by him under the contract and thereafter demanded a shipment of contract beans, it cannot be said that he then called for what he rejected but rather wanted other beans appropriated to the contract.

It is manifest from this record that plaintiff did not demand delivery of the beans in storage, but was insisting upon having beans delivered to comply with the contract and terms.

At the time of the sale of the beans by defendant, in November, 1933, there was a rise in the market

price and, upon trial, defendant offered evidence to show the market price at the time of sale.

In a motion for a new trial plaintiff claimed newly-discovered evidence, relative to the market price at the time of the sale, but the court, in denying the motion, stated that the market price was easily ascertainable and the evidence claimed to be newly discovered was not of such a nature. The ruling was correct.

The power of the court to amend the judgment by inclusion of omitted interest is also questioned, but this power is too well established to merit discussion. 3 Comp. Laws 1929, §§ 14148, 14149.

The judgment in favor of plaintiff was rendered under the common counts.

The record discloses no error and the judgment, as amended, is affirmed, with costs to defendant.

FEAD, C. J., and BUTZEL, BUSHNELL, SHARPE, and CHANDLER, JJ., concurred with WIEST, J. NORTH and POTTER, JJ., concurred in the result.